### Chicago Telephone Company v. Commercial Union Assurance Company, Limited, of London.

#### Gen. No. 12,857.

1. LANDLORD AND TENANT—*who responsible for overflows of water upon premises.* The responsibility for overflows of water depends upon the question of control and the responsibility rests with the landlord or the tenant, as the case may be, according to who is in control of the source or cause thereof, and where an overflow is established the presumption is that the same resulted from the fault of the party in control of the cause or source thereof. Where the premises have been demised, the liability is, ordinarily, with the tenant.

2. CONTRIBUTORY NEGLIGENCE—*when doctrine of, does not apply.* The doctrine of contributory negligence does not apply where it appears that the omission or conduct alleged to constitute contributory negligence was in the doing or the not doing of some act or acts in relation to a danger not reasonably to have been apprehended.

Action on the case. Appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1906. Reversed and remanded. Opinion filed February 1, 1907.

Statement by the Court. This was an action on the case to recover for damages to appellant's telephone cables located on the seventh floor of the Manhattan Building, in Chicago, caused by an overflow of water from appellee's washroom, located on the ninth floor

of the same building, directly above appellant's cables. The negligence alleged is the failure of the defendant to keep the washbowls, faucets, waste pipe and plumbing in good condition and repair and allowing the same to become defective. The defendant pleaded the general issue to all of the counts. The jury rendered a verdict of not guilty and judgment was entered against the plaintiff, from which judgment this appeal is taken.

It was stipulated that if any damage was suffered by the plaintiff for which the defendant was liable, the amount of such damage should be fixed at the sum of $800.

The defendant had occupied rooms on the ninth floor of the Manhattan Building for a number of years prior to the accident. Among these rooms was one, called in the testimony, "room 927," used by the defendant for storage purposes, which was directly north of and immediately adjoining the other rooms occupied by the defendant, but there was no door connecting them. In October, 1900, the defendant leased three additional rooms, and certain changes in its office arrangement at this time necessitated a change in the location of its washroom. Accordingly, a washroom about 8x12 was partitioned off and fitted up in the northwest corner of room 927. The only access to room 927 was through the door from the public hallway, which was always kept open during the daytime, but locked at night. The washroom contained four washbowls along the west wall and was provided with hooks along the east wall for the employes of the defendant to hang their coats upon, and for the protection of these coats, at the request of the resident secretary of the company, a spring lock was put upon the door opening into the washroom, and each of the employes of the defendant was furnished with a key. A spring was also put on the door to throw it shut. There was only one other key to the washroom door besides those held by the defendant's employes, and that was hung in the janitor's room on the third floor.

250    APPELLATE COURTS OF ILLINOIS.

VOL. 131.]        Chi. Tel. Co. v. Com. Union Assur. Co.

The overflow occurred January 9, 1903, sometime between 1 and 1:30 P. M. One of the day janitors had his attention called to the overflow by a boy on the eighth floor. He went to the washroom, found the door open, went in and found the water running at full speed from two faucets into the first two bowls, thence along the slab on the top of the bowls into the third bowl, which was broken, and through this broken bowl onto the floor. There were two or three inches of water on the floor. Water was seen coming down through the ceiling on the eighth floor and through the ceiling on the seventh floor and into plaintiff's cables. It soaked the insulation in three cables (out of forty in all) and ruined the cables so that it was necessary to replace them.

At the end of each cable was what is called a pothead, a lead sleeve about two or three feet in length and four inches in diameter. These potheads stood upright and were filled at the top with ozite for the protection of the wires. This ozite was, however, not moisture proof. Some months later, by what is said to have been a new process, the potheads were made water-tight.

There is evidence tending to show that the faucets were out of order, that they would frequently stick and not spring back, and that certain of defendant's employes were in the washroom that day from ten to fifteen minutes of one o'clock, when they turned the faucets and the water did not run.

The defendant offered testimony tending to show that the waste pipe underneath the four bowls had not a sufficient pitch to carry off the water; that the tap in the pipe was out of repair, and that the water had on some occasions backed up. It is said, however, that the water backed up was black, dirty waste water, and did not overflow the bowls, whereas the water which overflowed on the day in question was clear water. A short time after the overflow the plumbing in the washroom was overhauled and repaired. The evidence

tended to show that the broken bowl was replaced at the defendant's expense. But the other repairs appear to have been made by the owner of the building.

HOLT, WHEELER & SIDLEY, for appellant.

BATES, HARDING & ATKINS, for appellee.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

It is contended in behalf of appellant that the verdict is contrary to the weight of the evidence, to the law applicable and to the instructions; that the court erred in submitting to the jury the question of plaintiff's contributory negligence since, as is claimed, there was no evidence of such negligence; that questions of law were erroneously submitted to the jury, and it is insisted that a tenant is liable to third persons for damages resulting from the defective condition of the premises of which he has notice or from his negligent use of them, regardless of the duty to repair as between tenant and landlord.

The court gave at the instance of appellant an instruction as follows: "The jury are instructed that if they believe from the evidence that the plaintiff's property was damaged by an overflow of water coming from a washroom exclusively occupied and controlled by the defendant, then the law raises a presumption that the damage was due to the negligence of the defendant, and unless the defendant has shown by a preponderance of the evidence that it was not due to such negligence, the jury should find the defendant guilty."

We concur with appellant that this instruction correctly states the law applicable. Mendel v. Fink, 8 Bradwell, 378 (382), and cases there cited. In that case it is said that if water closets and the like were not under the landlord's "management, or that of his servants, but were under the management of a tenant

252 APPELLATE COURTS OF ILLINOIS.

VOL. 131.] . Chi. Tel. Co. v. Com. Union Assur. Co.

or tenants and the latter made a negligent use of them, the landlord would not be responsible.'' It is true that ''the landlord as to that portion of the building and appurtenances over which he retains control, must be held to also retain the responsibility to keep the same in reasonable repair in respect to all persons, including the tenants of the building.'' Payne v. Irwin, 144 Ill. 482-488, and cases there cited. But if a tenant is in exclusive control and occupation of a washroom in which an overflow occurs in consequence of the tenant's negligence or that of its employes having free access to such washroom, then it is not the landlord but the occupant of the premises who must be deemed responsible. Warren v. Kauffman, 2 Phila. 259.

In the present case there is evidence, apparently undisputed, which tends clearly to show that the room fitted up for appellee's use as a coat and washroom, in which the overflow occurred, was at the time exclusively occupied by and under the control of appellee. It is probably true, as said by the latter's attorneys, that the janitors of the building had access to it. In the same way they had access to the other rooms occupied by appellee. It is true also that ''room 927,'' which included the washroom, was not mentioned among the rooms expressly named in the written lease; but the fact remains not only that it had been taken possession of by appellee with the consent of the landlord, and that at the time of the accident it had been occupied by appellee ''a dozen years or more without let or hindrance,'' as appellee's manager testifies, but the washroom had been expressly fitted up for appellee's use. When additional space was rented appellee found it necessary to ''rearrange the washroom,'' and the manager discussed that with the agent of the building, telling the latter ''what we would like to have with reference to fitting up that washroom, and he went to work and did it.'' A spring lock was put upon the door and each of appellee's employes was furnished with a key. The only other key

was in the possession of the head janitor. · That appellee had this washroom under its exclusive control in the same way for practical purposes as the rooms adjoining, which it occupied under its written lease, cannot under the evidence be regarded as fairly open to question.

It is contended in behalf of appellant that in view of such exclusive possession and control it devolved upon appellee to show affirmatively that the overflow was not due to its negligence, and that appellee has failed to do this. Evidence was introduced tending to show that two of the faucets in the washroom were found open, discharging water which overflowed the bowls, that the faucets were spring faucets, that the springs did not always close automatically, that sometimes when they were opened the water did not flow immediately, and that the waste pipe was inadequate, not having sufficient pitch or inclination, that the trap leaked and that the plumbing generally was out of order. The washroom had, however, been· visited within a very short time before the overflow was discovered, by some of appellee's employes who had obtained or attempted to obtain water from these faucets. One of these employes testifies that the water did not run, and he left without washing his hands. He and others testify that the faucets did not always close when the spring was released. So far as appears from the evidence no one except these employes had been there that forenoon. The five janitors of the building testify that they had not been in the room during the day until after the discovery of the overflow. This is not disputed. The evidence therefore in the absence of any showing to the contrary warrants an inference that some one or more of these employes may have left faucets open, through which when the cause which temporarily obstructed the flow was removed the water ran out, overflowing the bowls and causing the injury complained of. The burden was, we think, upon appellee to disprove the inference of

negligence arising from its control of the washroom and the presence of its employes immediately preceding the overflow.

It is argued in behalf of appellee that "it was conclusively proven upon the trial, and it was not denied by anybody, that the condition of the wash bowls, the faucets, the waste pipes, the trap and the entire plumbing in that washroom was such that with the use of the most extraordinary care an overflow could not have been prevented by appellee;" and "that after this overflow the owner of the building had plumbers there who ripped out all the plumbing, put in new faucets and gave a pitch to the waste pipe." It may be granted, as there is evidence tending to show, that the plumbing and waste pipe were not in good order and condition, but if so, it was manifestly appellee's duty to take whatever care was necessary under the circumstances to prevent an overflow; and it does not follow, as claimed by appellee's attorneys, that the jury were justified in concluding that the fault and negligence causing the injury complained of was that of the landlord and nobody else. The alleged bad condition of the plumbing is immaterial, if the proximate cause of the overflow was negligence of appellee or its servants in leaving the faucets open. It may be that with better plumbing, carelessness in using it would not have been so likely to cause an overflow; but if the overflow was in fact caused by such negligent want of care, it was this and not the condition of the plumbing that must be deemed the responsible cause of the injury. The question of fact was for the jury.

It is further contended in behalf of appellant that the trial court erred in submitting to the jury the question of plaintiff's contributory negligence, when, as it is said, there was no evidence of any such contributory negligence upon which to base the instruction. The instruction complained of told the jury that "if from the evidence you believe that in expos-

ing its cable heads in said building and not keeping said cable heads concealed or covered so that they would not be subject to injury by overflow of water, the plaintiff was guilty of negligence contributing to bring about the injury complained of, then you are instructed that the plaintiff can not recover in this action.'' The ozite with which the potheads of appellant's cables were filled to protect the wires was not, it appears, waterproof; and the wetting of the insulation on the wires in three out of about forty potheads in the room where the accident occurred by reason of the overflow overhead caused them to ground and put them out of service. A few months after the accident appellant made all its potheads throughout the city water-tight. Appellee's contention is that as the apparatus was of a nature such as to be so easily affected by moisture, and the amount of damage resulting from a wetting would be so large, appellant was bound to anticipate and provide against such loss by putting tin caps over the potheads or using other adequate means to prevent water reaching them; and that it was proper to submit to the jury the question of fact whether appellant was not negligent in failing to thus protect apparatus so sensitive and expensive. We cannot concur in this view. It would necessitate holding that appellant was guilty of contributory negligence in not anticipating that appellee or some one else might negligently permit water to escape in such quantities as to penetrate floors ·and ceilings at that particular place, when no reason appeared to apprehend any such danger. In Engel v. Smith, 82 Mich. 1, 7, it is said: ''It is a sound rule of law that it is not contributory negligence not to look out for danger when there is no reason to apprehend any. Beach, Contrib. Neg., 41;'' the rule being that ''every one has a right to presume that others owing a special duty to guard against danger will perform that duty.'' See also Thompson on Neg., secs. 190, 191. It may be that

256 APPELLATE COURTS OF ILLINOIS.

VOL. 131.]     Chi. Tel. Co. v. Com. Union Assur. Co.

if there was evidence tending to show appellee had reason to apprehend such danger, the question of fact might properly be submitted to a jury. In the case at bar there is no such evidence. In Thompson on Negligence, section 191, is an illustration in point: "A moors his boat below the point on the river where B has moored his barges. Through the negligent manner in which B's barges are thus moored, they break away and striking A's boat, sink it. The place where A moored his boat was a safe place but for B's negligence. A may recover damages of B." Many similar illustrations may be found. One is given in Fraler v. Sears Water Co., 12 Cal. 555: "We apprehend that if a man carelessly fires a gun into the street, that it would scarcely be admissible for him, when sued for the injury, to say that by reasonable care, the other might have got out of the way." See also Curran v. Weiss, 26 N. Y. Supp. 8. We are of opinion the instruction complained of was erroneous.

It is further contended that the trial court erred in submitting to the jury a question of law. The question so submitted was whether from the evidence "it was the duty of the landlord or owner of the building to keep such faucets and wash bowls and waste pipes in repair, and that no duty of that kind devolved upon the defendant at the time that the overflow is claimed to have occurred." The landlord is not a party to the suit and the question whether it was the landlord's or tenant's duty to keep the plumbing in repair was not involved and was wholly immaterial to the issues between the parties to the action. We think it was erroneous to submit such question to the jury. The point in controversy was whether appellee was guilty of negligence causing the injury, and if it was, its liability would not be affected by failure of the landlord, if failure there was, to perform whatever duty to repair he might owe the tenant. "As a general rule the occupant and not the owner is responsible for injuries

arising from a failure to keep the premises in a proper state of repair." Tomle v. Hampton, 129 Ill. 379, 383.

For the errors indicated the judgment must be reversed and the cause remanded.

*Reversed and remanded.*