THE ORNSTEIN & RICE NECKWEAR COMPANY, A CORPORATION, Appellant, v. HIRSHFIELD SKIRT COMPANY, a Corporation, and EDWARD MALLINCKRODT, Respondents.

St. Louis Court of Appeals. Opinion Filed December 4, 1917.

1. **LANDLORD AND TENANT: Damages from Overflowing Drains: Evidence.** In an action by a tenant against his landlord and an-

other tenant for damages to a stock of goods, caused by water from an overflowing sink on an upper floor, evidence *held* to warrant a directed verdict for the landlord on the question of negligent construction of pipes and drains.

2. ———: ———: **Question for Jury.** In an action by a tenant for damages to a stock of goods caused by water from an overflowing sink of an upper tenant, evidence *held* sufficient to take to the jury the question of whether a drain was stopped and a cock left open through the negligence of the upper tenant.

Appeal from the Circuit Court of the City of St. Louis.—*Hon. James E. Withrow*, Judge.

REVERSED AND REMANDED (*with directions*) as to the first defendant, and AFFIRMED as to the second defendant.

*Perry Post Taylor, Emil Mayer* and *Ben L. Shifrin* for appellant.

(1) It was error to sustain the demurrer to the evidence and to give the peremptory instruction offered by the defendant Hirshfield Skirt Company at the close of plaintiff's case, and error to overrule appellant's motion to set aside the nonsuit as to that defendant, when the evidence showed and tended to show that appellant was damaged from an overflow of water due, in part at least, to the fact that a water faucet used by that defendant and in that part of the premises then exclusively occupied by it had been negligently left open and turned on; because (a) It is negligence to leave a water faucet open and turned on over night so that damage to other tenants may result therefrom. Killion v. Power, 51 Pa. State, 429 (432); Chicago Tel. Co. v. Commercial Union, etc., 131 Ill. App. 248 (251); Simon Reigel C. Co. v. Gorden B. B'y Co., 20 N. Y. Misc. 598 (599). (b) When the proof shows and tends to show, as is the case here, that an upper-floor tenant was in exclusive possession of such floor; that a water faucet on that floor was found open and turned on and water running therefrom; that such water overflowed and run down and damaged the goods of a lower tenant; then prima facie, the presumption is that the leaving open of the faucet was the act of the upper floor tenant or of some

one (employee, customer or those lawfully in his premises) for whose act he is responsible. Killion v. Power, supra; Chicago Tel. Co. v. Commercial Union, Etc., supra; Simon Reigel Co. v. Gordon B. B'y Co., supra; Curran v. Weiss, 6 N. Y. Misc. 138; Greco v. Bernheimer, 17 do. 592; Simonton v. Loring, 68 Maine, 164; Rosenfeld v. Arral, 44 Minn. 395; Hill v. Scott, 38 Mo. App. 370 (374). Where property in the keeping of a defendant is found to be in a dangerous condition and on account of such dangerous condition, plaintiff is injured, the inference is that such condition is attributable to defendant or his employees. Crawford v. Kansas City Stock Yards Co., 215 Mo. 394 (418). (c) An upper-floor tenant is liable to a lower-floor tenant for damage to the latter's goods where the evidence shows, either directly or inferentially, that such flowing of water is due to the negligence of the upper-floor tenant or of those for whose acts he is responsible. Authorities under (a) and (b), supra. (d) It makes no difference if the damages were also due to the fact that the drain pipe was obstructed and that without such obstruction the water would not have overflowed and caused damages, for, in spite of that obstruction, there would have been no damage had the faucet been turned off. If damage is proximately caused by the negligent acts of two different parties, both or either will be liable. Harrison v. Kansas City E. L. Co., 195 Mo. 606 (627). (e) In sustaining the demurrers to the evidence and giving the peremptory instructions, when there was evidence showing that damage was caused to appellant by water flowing from premises occupied by and under the control of defendant, the court below disregarded the rule that "all evidence and inferences unfavorable to appellant must be disregarded and all evidence and all reasonable inferences favorable to him must be taken into consideration." Frankel v. Hudson (Mo. Sup., July, 1917), 196 S. W. 1123; Hauser v. Bieber (Mo. Sup. in banc, June, 1917), 197 do. at p. 70. (2) Also, for the reasons stated and under the authorities cited in 1 supra, the court below erred in sustaining the demurrer to the evidence and giving the

peremptory instruction offered at the close of the plaintiff's case by the defendant, Edward Mallinckrodt, since the evidence showed and tended to show that he furnished the water to the tenants of the building and was, therefore, responsible for the general condition of the means (pipe, etc.) by which it was so furnished and that the water pipe in question was so obstructed that the water would not drain off and overflowed to appellant's damage.

*Gustave L. Stern* and *Marvin E. Boisseau* for respondent, Hirshfield Skirt Co.

(1) (a) There was no evidence of negligence on the part of said defendant. 24 Cyc, 1122; 2 Underhill on Landlord and Tenant, p. 839; Rosenfield v. Newman, 159 Minn. 156; Becker v. Bullowa, 73 N. Y. S. 944; Steinway v. Beck, 37 N. Y. S. 678; Tentzler v. Erlanger, 117 N. Y. S. 158; Tucker v. Roberts, 17 N. Y. S. 378, affirmed 138 N. Y. 606; 3 Farnham on Water and Water Courses, sec. 988; Stevens v. Woodward, 6 Q. B. D. 318; McCord Rubber Co. v. St. Joseph Water Co., 181 Mo. 678; McCarthy v. Fagin, 42 Mo. App. 619. (b) It is not negligence to leave a water faucet running, even if there had been any evidence that said defendant did so. Lane v. Scagle, 67 Vt. 281, 31 Atl. 289.

*S. Mayner Wallace* and *Shepard Barclay* for respondent, Mallinckrodt.

(1) The peremptory instruction for a verdict for the landlord was correct, because there was no proof of the negligence charged in the petition as to him, namely: omission to ascertain whether the faucet was turned on, before turning on the water which had been turned off. Only such negligence as is alleged may be proven. A different cause of action, if proven, would not support a finding or verdict on such allegations. Such proof would be a failure as to the different cause alleged. Grisamore v. Ry. Co., 118 Mo. App. 387; Edy v. Railroad, 77 Mo. 34; Gurley v. Railroad Co., 93 Mo. 450;

Conway v. Railroad, 24 Mo. App. 235; Bromley v. Lumber Co., 127 Mo. App. 151; Pointer v. Const. Co., 269 Mo. 105; McGrath v. Transit Co., 197 Mo. 97. (2) There was no proof that the water was turned off by any one and then turned on again by the landlord or his agents. So there was a failure of proof as to the case alleged. R. S. 1909, sec. 2021. (3) The petition does not state a cause of action as to the landlord. It avers that these two tenants occupied the third and fourth floors of the building, and that a faucet on the Hirshfield premises was carelessly left open whereby the damage by water resulted to plaintiff's goods on the third floor; but, even if the landlord was to supply the water, those facts created no liability for any open faucet on a tenant's premises. Carstairs v. Taylor, L. R. 6 Ex. 217; Whitehead v. Comstock, 25 R. I. 421, 56 Atl. 446; Clifton v. Mackauf, 150 N. Y. Supp. 555; Blake v. Woolf (1898), 2 Q. B. D. 426. (4) Apart from the failure of proof as to the specific charge in the petition against this defendant, no negligence of any sort was shown as to him. The water appliances were sufficient to carry off all the flow from this faucet running "at its full capacity" (Abs. p. 16). The tenants were "to keep the water pipes and plumbing in good order" (Abs. pp. 47; 98). Nothing done or omitted by the landlord was shown to have contributed to plaintiff's damage. Even if a defective condition of the pipes existed, and by reasonable care on the part of the tenant in possession damage would not have ensued, the landlord is not liable. McCord Co. v. Water Co., 181 Mo. 678; M'Carthy v. Bank, 74 Me. 315, 43 Atl. 591; Sheldon v. Hamilton, 22 R. I. 233, 47 Atl. 316; Mellen v. Morrill, 126 Mass. 543; Kenny v. Barnes, 67 Mich. 336, 34 N. W. 587; Lee v. McLaughlin, 86 Me. 413; Rickards v. Lothian, (1913), A. C. 263. (5) On the facts in evidence, the intervention of possession of the premises by these tenants respectively deprived the landlord of such control of the faucet in question as might otherwise have made him responsible for allowing the outlet pipe of the sink to be clogged or choked, so as to produce an over-

flow. Rickards v. Lothian (1913), A. C. 263; Mendel v. Fink, 8 Ill.-App. 378; Haizlip v. Rosenberg, 63 Ark. 430, 39 S. W. 58; Cooper v. Lawson, 139 Mich. 628; Lebensburger v. Schofield, 155 Fed. 85; Lederer v. Fox, 151 Ill. App. 300; Eyre v. Jordan, 111 Mo. 424. (6) No causal connection between the injury and any act or omission of this defendant appeared from the facts and circumstances in evidence. Rosenfield v. Newman, 59 Minn. 156, 60 N. W. 1085; Tentzer v. Erlanger, 117 N. Y. Supp. 158; Greene v. Hague, 10 Ill App. 602; Pembroke Co. v. Rogers, 125 Pac. 866, 41 Utah 411; Stevens v. Woodward, 6 Q. B. D. 318; Buckley v. Cunningham, 103 Ala. 449, 15 So. 826. (7) If there was a defective or obstructed condition of the escape pipe from the water sink on the fourth floor that condition was not proven by plaintiff to have existed when the letting of those premises took place; and without such showing there would be no liability on the part of the landlord. Ward v. Fagin, 101 Mo. 669; McKeon v. Cutter, 156 Mass. 296, 31 N. W. 389; Roberts v. Cottey, 100 Mo. App. 500.

BECKER, J.—Plaintiff sued the defendants below for damage to its stock of goods resulting from the alleged negligence of the defendants in allowing water under their control to flood plaintiff's merchandise. At the close of plaintiff's case the court gave a peremptory instruction to the jury to find against the plaintiff and in favor of each of the defendants, whereupon plaintiff took an involuntary nonsuit and after an unavailing motion to set the same aside, brings this appeal.

Plaintiff below, appellant here, occupied the third floor of the building at 901-5 Washington Avenue, St. Louis, Missouri, for the purpose of carrying on its business of manufacturing and selling neckwear at wholesale. The building was a seven story commercial structure owned by the defendant Mallinckrodt, the several floors of which were occupied by various tenants. The defendant, Hirshfield Skirt Company, was, at the time

that the plaintiff alleges it sustained its damage, occupying the fourth floor of the building where it conducted a business of manufacturing and selling skirts at wholesale.

On the morning of the day in question, namely, Monday, June 4, 1913, when plaintiff's place of business was opened, water was found to be dripping from the ceiling of the third floor, which was caused by a sink in the toilet room on the fourth floor overflowing, the water flowing into said sink from a partly open faucet. The water dripping onto plaintiff's merchandise was the cause of the alleged damage of which plaintiff sues the said skirt company and the owner of the premises to recover the damage thus sustained.

The petition, after alleging the ownership and tenancy of the building, alleges that the ''Skirt Company, its servants, agents and employees negligently and carelessly allowed and permitted a water faucet located in that portion of said building and premises occupied by said defendant skirt company to be and remain open and turned on and water was permitted to run from said faucet, so left open and turned on, and to overflow and to soak through the floor and drip and run through and upon the portion of the stock of merchandise so maintained by plaintiff on said third floor of said building so that a portion of said stock was damaged, ruined and rendered worthless; that because of the negligence and carelessness of the defendant Mallinckrodt and of his agents, servants and employees in charge of said building and premises, the water upon said premises which, at the time said faucet has been, as aforesaid, left open and turned on, was turned off, but that said defendant Mallinckrodt, his aforesaid agents, servants and employees negligently and carelessly turned said water on without first ascertaining whether or not any faucets in said building might be so left as to cause said water to overflow and to damage the property of the tenants of said building, and particularly of this plaintiff; and that by reason of the negligence and carelessness of the defendant, Hirshfield Skirt Company, in permitting

said faucet to be turned on and left open, and of said defendant, Mallinckrodt, and his agents, servants and employees in turning on said water when said faucet was so left open and turned on, and further by reason of the negligence and carelessness of both said defendants and of their agents, servants and employees, in so maintaining the water pipes, sinks, drains and water fixtures of said building, that the water, when so turned on, could not be carried through the proper channels, such water was in the manner aforesaid, permitted to and it did overflow, leak through said fourth floor and drip and pour upon the aforesaid property of the plaintiff, causing, as aforesaid, same to be and become damaged, ruined and rendered worthless.''

Then followed an itemized list of the property alleged to have been damaged; an allegation of damages in the sum of $760.78 and a prayer for judgment in that amount with interest and costs. The answer of each of the defendants was a general denial.

Plaintiff, to prove its case, introduced its lease with the defendant landlord in which we find the following provisions: ''That lessee and all holding under it agree to use reasonable diligence in the care and protection of said premises during the term of this lease; to keep the water pipes and plumbing in good order; . . .'' Plaintiff also introduced the lease from the defendant owner of the building, to the defendant, Hirshfield Skirt Company, which lease contained the following: ''The lessee further agrees . . . that they will keep the water, gas pipes and also the plumbing in good order . . . that they will keep the plumbing connections of the premises occupied by them open and in good order; that they will pay the water license for said premises according to the regulations of the water department of said city.''

The plaintiff, to sustain its cause of action, then introduced the secretary of the defendant company, J. Laskowitz, who testified that the defendant skirt company occupied the fourth floor and that the plaintiff occupied the third floor of the building on the day in ques-

tion; that it was his invariable custom to open up his place of business in the morning at five minutes past seven, he having the only key to the premises, and that he did the same on this particular morning; that he had locked up the premises the night before and that the premises when he opened them the following morning were just as he left them; that no one else had access to the premises after he locked them; that Robert Farrell, the porter for the defendant skirt company arrived about the same time that he did and both entered the premises; that he heard the water running and saw some water spread out over the floor and upon investigation he found the water faucet, which was in the wash room partitioned off from the rest of the premises, was turned on, "just one way a little bit," "one-fourth or a fraction over," "make it three-eights;" that the particular faucet from which the water was running was a conventional faucet with a lever to turn the water on and off, and underneath the faucet was what might be termed an ordinary kitchen sink; that he found the sink full of water and the water running over. He immediately turned off the faucet and the water in the sink ran down very slowly through the drain; that he put his hand down into the sink to ascertain whether there was anything to stop the flow of the water but he found nothing. In answer to the questions, he testified as follows: "Q. The drain was sufficient to carry off the water at its full capacity, was it? A Yes, sir; of course I gave the porter instructions to keep that open, to see that the thing was clean from any stuff that was there. . . . "Q. And on that morning you saw nothing in the sink that impeded the flow of the water? A. Not a bit in the sink." He testified that the sink was the only wash stand that was on the floor and that some times they had as high as forty or fifty people employed and that the male employees used the sink to wash their hands in, usually as they were about to leave, and he watched, "that thing." "Q. Who left that faucet turned on? A. Nobody left the faucet turned on; the faucet was not turned on. Q. It was not when

you left? A. No, sir, it was turned off when I left; no water running when I left, because that is my work. Q. You are the last one to leave? A. Yes, sir. Q. And also the first one to be there? A. Yes, sir. Q. You do the locking up of the shop? A. Yes, sir. Q. When you came there in the morning, this small jet was running? A. A little stream running. Q. No obstacle at all? A. No, sir. The court, Q. No porter nor anybody else had a key but you? A. No, sir. . . . Q. Did these holes (meaning the perforations in the outlet of the sink) ever get stopped up by people throwing in matches or cigarettes or cigar stumps? A. Yes, sir; it got stopped up but we took care of that. . . . Q. You mean to say that this water faucet got turned on of its own accord; that no one left it on. A. That is what I said.''

The plaintiff then put on the porter of the said defendant skirt company as their witness. He corroborated the witness Laskowitz, that as he entered the building with him they found the water was overflowing the sink and flowing onto the floor; that he immediately went to the third floor, occupied by the plaintiff company, and saw water on the boxes containing the merchandise of the plaintiff company, and could see where the water had dripped down from the ceiling above.

Several witnesses testified for plaintiff as to the water dripping from the ceiling, and that the water had fallen onto the merchandise of the plaintiff company, and testified as to the amount of the damage. There was testimony to the effect that some twenty-five by thirty feet of the ceiling was wet and the water dripping down from the ceiling and from the beams supporting it.

E. Hirshfield, the president of the defendant skirt company, was put on the stand. He testified that on the 4th day of June, 1913, the defendant skirt company occupied merely the front half of the third floor under a lease from the owner of the building, and that the toilet and wash room was for the joint use of themselves and such tenant as might occupy the other portion of the

said third floor, but that on that date there was no tenant occupying the other portion of the floor, but that they had entered into a new lease whereby they were to take possession of the entire floor some time later.

The sole question to be determined here is whether or not plaintiff, on the facts as shown in the record, was entitled as against either of the defendants, to go to the jury.

In considering demurrers to the evidence and peremptory instructions at the close of plaintiff's case, "all evidence and inferences unfavorable to appellant must be disregarded and all evidence and all reasonable inferences favorable to him must be taken into consideration." [Buesching v. St. Louis Gas Light Co., 73 Mo. 219; Frankel v. Hudson (Mo.), 196 S. W. l. c. 1123 Hanser v. Bieber (Mo.) 197 S. W. l. c. 70.]

We will first take up the question as to the peremptory instruction given by the court, that the jury under the pleadings and evidence must find for the defendant, Edward Mallinckrodt, the owner of the building. The allegations of negligence in plaintiff's petition as to the defendant, Mallinckrodt, are set out above in our statement of facts.

The written leases introduced by plaintiff, under which leases both the plaintiff and the defendant skirt company occupied premises in the building for a term of years, specifically provide that the water and the plumbing was to be kept in good order by the lessees. That fact taken together with the testimony that the drain of the basin was sufficient to carry off all the water, even when the faucet was turned on to its full capacity, and there being no evidence of any defective condition or construction of the basin or water pipes, attributable to the landlord, and no evidence offered that the defendant, landlord, or any of his agents, servants or employees, turned on any water in the building without a previous investigation as to whether the faucet was open, the plaintiff clearly failed to make out a case, and the court properly gave the peremptory in-

struction for the jury to find in favor of the defendant, Mallinckrodt.

We next come to the question as to whether, under the record, the plaintiff has made out a sufficient case to go to the jury against the defendant skirt company.

There was evidence that the defendant skirt company occupied the front half of the fourth floor under a written lease and that no other tenant occupied any part of the balance of the floor on the day on which the damage was sustained by plaintiff. The secretary of the defendant company testified that the wash room in which the faucet and sink in question were located, was used by the company's male employees, and that he personally made it his business each evening before leaving the building to see to it that the faucet was turned off and no obstacle in the sink, and that on the night previous (meaning undoubtedly on the Saturday night previous, a Sunday intervening, the record showing that the damage was discovered on Monday morning) before leaving he had examined the faucet in question and found that it was turned off; that he was the last man to leave the premises and had locked the premises. He further testified that he was the man who unlocked the premises on Monday morning and that to all appearances no one had been there in his absence. That on entering he found the water overflowing and the faucet turned on perhaps three-eighths of its capacity; that he examined the drain of the sink but found nothing to obstruct the flow of the water; that the water drained off very slowly but later in the day the drain again carried off the water even when the faucet was turned on full force; that he did not know what caused the temporary obstruction. He testified that the water had overflown onto the floor from the sink. There was evidence that the water had wet a space on the wall beneath of some twenty-five by thirty feet, and that the water dripped down onto the plaintiff's merchandise on the floor below and damaged same.

Added the fact that the defendant skirt company's lease contained the provisions that: The lessee further

agrees. . . . "that they will keep the water, gas pipes and also the plumbing in good order . . . that they will keep the plumbing connections of the premises occupied by them open and in good order; that they will pay the water license for said premises according to the regulations of the water department of said city."

Are then the facts as we have stated them sufficient to warrant the submission to the jury of the question whether the defendant skirt company was guilty of negligence?

While the secretary of the defendant skirt company testified that when he left the premises the night previous the water was turned off, we know of no rule of law which would obligate the jury to find from that testimony that the faucet was in fact turned off when the witness left. The other facts in the case seem to us sufficient from which the jury could infer that the wit-ness was mistaken and that the faucet was in fact partly open when the witness left the night before, and from the fact of the extent to which the water had spread and gone through the ceiling below, that the faucet had been running a considerable period of time. Inferences of this kind, when based on sufficient facts, are clearly within the province of a jury.

In the case of Chicago Telephone Co. v. Commercial Union Insurance Co., 131 Ill. App. 248, the court held on facts very much similar to the present case, that the burden was upon the appellee (defendant) to disprove the inference of negligence arising from its control of the wash room and the presence of its employees immediately proceeding the overflow. In other words, the responsibility for overflow of water was held to depend upon the question of control and responsibility held to rest with the landlord or tenant as the case may be, according to who is in control of the source or cause thereof and where an overflow is established the presumption is that the same resulted from the fault of the party in control of the cause or source thereof.

In Killion v. Power, 51 Pa. State Rep. 429, we find a case in which an action was brought for negligence

for leaving open a stopcock in the third floor of a store occupied by the defendant and thereby flooding with water the store of plaintiff in the basement. One Hughes, who was a customer of the defendant, while on the premises had gone to the third floor of the building and was heard at the stopcock by one of the employees and was told there was no water there, the water at that moment being turned off in the street where repairs were being made. The inference is that Hughes turned the cock and finding no water left it so. The appellate court sustained the view of the trial court that if Hughes came upon the premises with the express or implied assent of the defendant or his servants, and with the like express or implied assent turned on the water and left it running and the defendant failed to turn it off again, there was evidence of negligence on the part of the defendant. "There was ample evidence here that Hughes was not a mere trespasser. If Hughes came there by permission and was permitted to use the water, certainly it was negligence, under the facts of this case, not to see to the condition of the cock before the store was closed for the day. The stopcock was in the third story occupied exclusively by the defendant and where plaintiff had no right to go. When the defendant or his servants left the store, filled as it was with valuable goods, of course it must be locked up. A duty lay upon him to take care that so dangerous a thing as this stopcock was under the circumstances, should not be left open to flood the store of his neighbor below stairs. The maxim *sic utere tuo ut alienum non laedas,* has here its most apposite application. It would be such negligence as entitled the plaintiff to recover."

In the case of Rosenfield v. Arrol, 44 Minn. 395, with reference to cases like we have at bar, it is said: "Negligence, which is the want or absence of ordinary care, is the gist of the action, and the burden was upon the plaintiffs to prove facts from which it could be fairly be inferred that the defendant's negligence was the proximate cause of the injury. The evidence need not be direct and positive. The fact of negligence in any

given case is susceptible of proof by evidence of circumstances bearing more or less directly upon the fact. The plaintiffs were not bound to prove more than enough to raise a fair presumption of negligence on the part of the defendant and of resulting injury to themselves. Having done this they were entitled to recover unless the defendant produced evidence sufficient to rebut this presumption."

In Slater v. Adler, 8 Misc. Rep. (N. Y.) 310, the court said: "Where there are two tenants in occupation of the premises, one being above the other, while it is true there is no contractual relation between them, yet each is bound to see to it that no injury shall happen to the other by reason of any negligence on his part. The case shows that there may have been a stopcock on the floor occupied by respondent's assignors which could be reached by both them and the appellant, yet the evidence makes it clear that there was also a stopcock on the floor of the appellant's premises, and that the water which ran on the respondent's premises flowed through that stopcock into barrels, from which there was a waste pipe which probably, from some cause which does not appear, became choked up. This made the appellant liable." [Moore v. Hoedel, 34 N. Y. 532; Eakin v. Brown, 1 E. D. Smith, 36; Totten v. Phipps, 52 N. Y. 356.]

This court in an opinion by THOMPSON, J., in Hill v. Scott, 38 Mo. App. l. c. 374, adopts the doctrine quoted in that opinion as follows: "There must be reasonable evidence of negligence. But where the thing is shown to be under the management of defendant or his servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by defendants, that the accident arose from want of ordinary care."

We hold that the plaintiff made out a case sufficient to go to the jury as against the defendant, Hirshfield Skirt Company. The court below, by taking the case away from the jury as against said defendant, de-

prived appellant of a right which it was entitled to. This was prejudicial error.

As to the defendant, Edward Mallinckrodt, the judgment of nonsuit is affirmed; but as to the defendant, Hirshfield Skirt Company, the judgment is reversed and the cause remanded with directions to the trial court to set aside the nonsuit and grant the plaintiff a new trial. *Reynolds, P. J.,* and *Allen, J.,* concur.