No. ——

First Circuit

BOUDREAUX v. LEDET

(May 4, 1926. Opinion and Decree.)

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Negligence—Par. 1, 2.**

One who builds a fire out of trash and rubbish on his own property and negligently leaves it without a guard is responsible to others for the damage it causes them.

2. **Louisiana Digest—Negligence—Par. 22.**

One who leaves wood stacked in swamps is not contributorily negligent because it happens to be in a place where it can be burned by a possible fire started on nearby land owned by others.

(Civil Code, Art. 2315. Editor's note.)

Appeal from the Parish of Lafourche. Hon. R. B. Butler, Judge.

Action by Louis Boudreaux against Louis Ledet.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

F. L. Knobloch, of Thibodaux, attorney for plaintiff, appellee.

Howell, Wortham & Bourg, of Thibodaux, attorneys for defendant, appellant.

MOUTON, J. Forty cords of wood belonging to plaintiff were destroyed by fire on February 11, 1925, and seven dollars were expended by him for labor to extinguish it. He sues defendant for the value of the cord-wood and the amount spent to suppress the fire, claiming that it was negligently lighted by defendant and was carelessly permitted by defendant to spread to his property with the result stated, and for which he demands damages for $288.50, including attorney's fees.

Judgment was rendered in his favor for $168.20, from which defendant appeals.

The evidence shows that defendant had lighted or started a fire on his own premises to clear his field of trash and rubbish. This he had a right to do, and he is not therefore charged with negligence as to the origin of the fire. The charge is that he negligently permitted the fire to spread and to be communicated to the cord-wood of the plaintiff which was destroyed by the fire.

The lands of both plaintiff and defendant are located a short distance from each other, fronting on Bayou Lafourche and running in the rear about forty arpents. It is admitted that a narrow tract of about half an arpent wide belonging to Braud is located between these two properties.

Charles Guidry, Jr., witness for plaintiff, says he saw defendant working around his trash piles on his property at about 11 o'clock of the day of the fire. Plaintiff says he saw when defendant set fire to these trash piles at about that hour. In this, plaintiff is corroborated by the testimony of Charles Guidry, Sr. It appears from the testimony of two or three witnesses that upon plaintiff demanding payment from defendant for the damages he had suffered, defendant said he had started the fire on his place, and damned the rest. It was also shown that the charred remains of burned trash, grass or rubbish, showed that the fire had cut a path across the strip of land belonging to Braud, and could be traced to the premises of the plaintiff which were located west therefrom, and from which direction a strong wind was blowing at the time. The defendant denies that he set the fire on his property. Some of his witnesses, and particularly his father, support him in this statement. Their testimony is unsatisfactory and not at all persuasive. The preponderance of the evidence clearly shows that the fire was started by plaintiff, and the corroborating facts and circumstances show with legal certainty that he was responsible for its origin. The important question, however, is as to whether he carelessly or negligently allowed this fire to escape beyond the boundaries of his land and to spread from there to the cord-wood of the plaintiff.

The proof shows a high wind was blowing at the time from the west, from the property of defendant and in the direction of plaintiff's land where the wood was corded. The weather was extremely dry, in fact the country was experiencing a drought at that time which was one of the most severe ever experiencd before. No doubt, the ground was parched, and the trash, dry leaves, stumps and rubbish on the surface of the fields and swamps were in a very inflammable and combustible condition. Defendant was doubtless aware of that. The proof is that after he had set the fire to the pile of trash in the rear of his field he left for the front part of his farm without placing anyone to watch over or guard the fire he had lit in the rear. He returned there about an hour after, but it was then too late as the fire had developed into a conflagration that could not be stopped or suppressed. Defendant knew or must be held to have known that, as a natural and probable consequence of his act, the fire, under the existing conditions, would have passed beyond the limits of his property, unless controlled or suppressed in time. He made no effort to guard against such consequences, and did not exercise ordinary care and was therefore careless and negligent. In L. R. A., Vol. 8, N. S., p 1963, in the case of Mahaffey vs. Rumbarger Lumber Company, in dealing with a question similar to the one under discussion, the court, in speaking of ordinary care, said:

"What constitutes ordinary care and prudence depends upon the circumstances of the particular case. The greater the danger of communicating fire to the property of others, the more precautions and the greater vigilance will be necessary to constitute such care."

In Taylor vs. V. S. & P. Ry. Co., 123 La. 768, 49 South. 518, not a case involving the destruction of property by fire, but where an accident had occurred at a railroad crossing, the court took occasion to say that, "as danger increases, so should there be increased precaution". Considering all the elements of danger which were present when this fire was set by plaintiff in the instant case, ordinary care under the circumstances demanded, at least, that he should have placed someone in charge

when he left the rear of his farm where he had ignited the piles of trash or should have exercised some vigilance or provided for some precautionary measures to either control the fire or to suppress it in case it proceeded to invade the fields or premises of his neighbors. He did not do that and must therefore be held for the damages inflicted on plaintiff, unless he can find refuge in his contention that he should be exonerated because of contributory negligence on the part of the plaintiff. The proof shows that after plaintiff had seen the fire set by defendant in the forenoon, he left his home and went to the town of Thibodaux, a few miles away, came back in the afternoon, but the fire had then spread to his property, and it was too late to stop it. This fire had been started by defendant on his own property, and with which plaintiff had no right to interfere. He had a perfect right to expect that defendant would keep a watchful eye over the fire or would adopt means for its control or suppression. He could not be expected to foresee that defendant would fail to exercise ordinary care in handling the situation and that the fire would be negligently permitted to cross over the property of Braud and to then invade his own and to ignite his cord-wood that had been stacked in the swamp. It is impossible from such a state of facts to reach the conclusion that because of plaintiff absenting himself temporarily he was guilty of contributory negligence towards the defendant.

Counsel makes a spirited and vigorous effort to support his contention on this proposition, and cites with confidence on this subject, Haas vs. Director General of Railroads, 150 La. 599, 91 South. 58. In that case a gin house and bales of cotton were destroyed by fire caused by cinders escaping from a locomotive. The fire took in some loose lint cotton which the owner had spread on a platform alongside the railroad track. The court found that the railroad company was at fault in setting the fire, but exonerated it from liability, finding that plaintiff had been guilty of contributory negligence. The court said, in referring to the lint cotton, that the "spreading of this inflammable material so near the railroad when a locomotive might pass at any time and drop a live cinder upon it was highly improvident". For that reason plaintiff was found to have contributed to the injury, and was denied recovery. Counsel for defendant contends that plaintiff is likewise responsible for contributory negligence in this case because he had stacked his cord-wood in the swamps, and knew or should have known that tie-makers, hunters and the farmers in clearing their fields might set fire to brush or rubbish which, fanned by strong winds, could spread to the spot where the wood had been corded. The cases are not at all similar. In the Haas case, the owner placed the lint cotton, a well-known very inflammable material, next to a railroad track where he knew locomotives were passing and had to pass at every moment. He knew that cinders will, at times, escape from the best and most modern spark arresters, and, having placed the lint in such close proximity to the track, such exposure unquestionably constituted contributory negligence. There is nothing of the sort here. The wood was corded in the swamps, a place where wood is usually stacked for future sale or use. There was no exposure here of the wood to ignition by fire as was the case of the lint cotton that had been exposed to the sparks of the engine which might have ignited it at any time. There was no such menace in the instant case to the property of the plaintiff from the possible fires which counsel says might have been started somewhere in the vicinity by tiemakers,

hunters and field hands. Such fires might have been possible or probable and by a further probability might have been expected to extend to the swamps, but plaintiff cannot be held for contributory negligence because he had stacked his lot of wood where it was destroyed and where there might have been a probability or possibility of its being consumed by fires originating in the manner contended for by counsel for defendant. There is no merit in this contention.

The court properly rendered judgment for plaintiff.