## WASHINGTON v. RAVEL. (No. 2245.)

Court of Civil Appeals of Texas. El Paso. Feb. 28, 1929.

Rehearing Denied March 16, 1929.

Fryer & Cunningham, of El Paso, for appellant.

M. V. Ward and Jos. U. Sweeney, both of El Paso, for appellee.

HIGGINS, J. The Fisher Hotel Building in the city of El Paso is owned by the Terrazas estate. Appellee Ravel is the lessee of a room upon the ground floor in which he has a shoe store. The upper floors in the building are leased to appellant Washington and used as a hotel.

Appellee's store was flooded with water coming from the floor above, damaging his stock of goods. He brought this suit against Washington to recover the resulting damage to his stock, which he alleged to be $212.35. It was alleged the defendant negligently and carelessly permitted a faucet or toilet to flow in one of the rooms occupied and used by defendant and controlled by him, and flood appellee's premises.

Judgment was rendered in Ravel's favor for $150, from which Washington appeals.

All of the propositions submitted, except two, in different forms assert the evidence is insufficient to show negligence on the part of defendant in causing the injury and damage. The only evidence offered was the testimony of Ravel. He testified:

"On the morning of the 12th of July, I noticed some water run from above my room on to my merchandise. I came down to the store and water was running on my goods; there was about two inches of water, and I couldn't get any one to help me clean it up so I had to work about three hours moving my merchandise. I went back to the store and mopped up the water. A lot of people were in the store looking at the water.

"The following morning, I called Mr. Washington to come and look at the damaged shoes; he went and looked and he told me to take the shoes out of the boxes and he would come back in the afternoon and make an adjustment. I took the shoes out of the wet boxes and I laid them aside for him to come and make the adjustment. He did not come. * * *

"After I received the telephone call and came down to the store the water was coming down right from the hotel, from the ceiling of my room. It was still running, not as much as before. It had been pouring down. Mr. Washington had charge and control of the floor above me at that time. * * *

"Mr. Washington runs the hotel. A hotel where people stay, and where people pay something for the room, I suppose. I do not know what kind of a place it is; I know people stay there. People come there and spend

the night and it is a regular hotel. In speaking of the water coming down from the hotel, I do not know from what room the water was coming, but that it was coming from the hotel. I do not know if the room was occupied from which the water was coming through; I couldn't say; I don't know. I know it was from the ceiling; it was coming from the upstairs. I say the water was coming directly overhead. I could not say, that before water finally seeps through that it will run a distance before it runs through, or in other words, if water would come through here, I do not know whether it would be possible for it to go along this way (indicating), come down to here, this way, before it finally goes down inside of the room. I don't know where the water I speak of came down from. I say it was coming down, but where the original water came from I could not say. I don't know what caused it. I said that I didn't know where the water was coming from, but I say it was coming from directly overhead into my room, and that is all that I know about it."

The testimony shows the water came from a floor of the building in possession of and under the control and management of defendant. The flooding of a lower floor by water escaping from the upper floor through the ceiling is something that does not happen in the ordinary course of things if those in possession and control of the upper floor exercise proper care, and, in the absence of any explanation by defendant, warrants the inference of negligence upon the part of the person in control, management, and possession of the upper floor. The doctrine of res ipsa loquitur is applicable to facts here shown. Note in 18 Ann. Cas. 534; 45 C. J. 1193; Ornstein & Rice Neckwear Co. v. Hirshfield Skirt Co., 198 Mo. App. 140, 199 S. W. 456.

▉▉ Appellant argues the doctrine is not applicable because the evidence shows he was running a hotel upon the upper floor and the flooding may have been caused by a guest in the room above leaving the faucet turned. If this was the case, appellant would not be liable; but if such room was occupied by a guest who caused the injury, that was a matter peculiarly within the knowledge of appellee, and it was incumbent upon him to offer such evidence in explanation of the accident and to relieve himself of the inference of negligence arising out of his possession, control, and management of the upper floor.

The inference of negligence arising upon the doctrine of res ipsa loquitur is much strengthened by the unequivocal and undisputed recognition by appellant of his liability and promise to adjust the loss as shown by appellee's testimony.

▉ The general allegation of negligence was sufficient under the facts disclosed by this record. Mo. Pac. Ry. Co. v. Hennessey, 75 Tex. 155, 12 S. W. 608.

▉ It is further asserted the evidence shows the trial court did not have jurisdiction because the evidence shows the amount in controversy was less than $200. It is true the plaintiff's testimony shows a damage of less than $200, but for jurisdictional purposes the allegations of the petition, as to the amount of the damage, are accepted as true, in the absence of a proper plea to the jurisdiction of the court.

Affirmed.