## VAN HORN v. WYOMING GAME AND FISH COMMISSION

(No. 2097; July 11, 1939; 92 Pac. (2d) 560)

For appellant, the cause was submitted on the brief of *Ray E. Lee*, Attorney General; *Thos. F. Shea*, Deputy Attorney General; and *Wm. C. Snow*, Assistant Attorney General of Cheyenne.

348

For the respondent, the cause was submitted on the brief of *Fred W. Layman* of Casper.

RINER, Chief Justice.

This cause is presented here as a direct appeal from a judgment of the district court of Natrona County.

Laws of Wyoming, 1937, Chapter 64, Section 47, relating to the Wyoming Game and Fish Commission, the first two sentences thereof, reads:

"Any person, firm or corporation whose property is being damaged by any of the game animals of this State shall within ten (10) days' time after knowledge of any such damage, report said damage to the nearest warden, deputy game warden, or member of the Commission.

"Any person, firm or corporation claiming damages from the State of Wyoming for the injury or destruc-

tion of property by game animals of this State shall present a verified claim therefor, at the office of the Commission not later than thirty days after said damage occurred, particularly specifying the damage and the amount claimed; all such claims shall be promptly investigated under the supervision of the Commission and rejected or allowed and paid by it in the amount determined as due."

The Section then provides in substance that parties having claims of this character may not recover upon them unless they comply with the provisions of the Section; that when certain named animals are inflicting damage they may be exterminated; that a claimant "aggrieved by the decision" of the Commission may appeal to the district court of the county where the damage occurred, the appeal to be taken in the manner indicated by said Section; that "a trial de novo to the Court shall be had" in such district court, and that the losing party in that trial may bring the case here.

Frederick Van Horn, a minor, during the summer and early fall of 1937 had a truck garden on Casper Mountain, which is situated not so very far distant from the City of Casper. This garden was enclosed with a four or five strand barbed wire fence and gate. The fence had posts about $4\frac{1}{2}$ or 5 steps apart. He had planted three acres of the ground in head lettuce, which was duly cultivated during the growing season of that year. The lettuce matured about the 17th or 18th of September. Frederick left the garden in the care of his father on September 5th to return to the High School in Casper and continue his studies there.

Some trouble had been experienced during the summer with deer jumping the fence and devouring the garden vegetables, but apparently no serious damage had been done, as there is abundant testimony in the record that towards the middle of September the garden was in excellent condition. However, on September 20th, when Walter Van Horn, the father of

Frederick, was absent from the vicinity of the garden, between five and six hours, cutting poles, some twenty head of deer got into the garden and practically ruined the lettuce crop. The Deputy Game Warden at Casper was notified, inspected the damage, and it was agreed that fifty per cent of the crop should be taken as the basis for estimating the damage. A verified claim was submitted to the Wyoming Game and Fish Commission, as required by the section of the law above described, on October 12, 1937, by Frederick, in the sum of $1320.00. This claim, as shown by the records of the Commission, was denied by it, the minutes of that body regarding such action reading:

"Commissioner Scott made a motion that claim No. 15 made by Frederick Van Horn in the sum of $1320.00 for deer damage be not allowed on the basis that it had not been approved by a Deputy Game Warden. The motion was seconded by Mr. Johnson and carried."

An appeal was prosecuted by the claimant to the district court aforesaid from the ruling of the Commission and trial de novo had to the court, with the result that the court found that the Commission "should have paid and allowed said claim," and adjudged that Frederick Van Horn should be awarded the sum claimed to be due; that the decision of the Commission should be reversed, and that it be ordered and directed to pay the award thus made, with costs of the suit. That body, through the Attorney General's office, has brought the record here for review.

It is argued for the Commission that the evidence on behalf of the claimant discloses contributory negligence on his part, because his father, his representative who was to look after the crop during his absence in school, left the premises for five or six hours and allowed the deer to ruin the head lettuce acreage. But the trial court found against the Commission in that the latter should have allowed and paid the claim, and there is

substantial evidence to support this finding as against the contention of the Commission. As stated above, the entire garden was fenced with a substantial fence and closed gate, which was in the exercise of at least some considerable care on the part of the owner, although the deer it appears would jump the fence.

The proofs show that between the 5th and 20th of September no serious damage was done in the garden, if any. It does not appear either that Walter Van Horn had never before been absent, as he was on the 20th, when the damage occurred. The record does not disclose either that the deer had ever before come into the garden in such large numbers as they did the day it was so seriously injured. There was evidence, too, that these animals usually came just about daybreak in the morning and about 4:30 o'clock in the evening. The evidence establishes that on the 20th the deer were discovered in the garden about 11:00 a. m., when Walter Van Horn returned to prepare his noon day meal. Just when the animals got into the garden does not seem to be known. Evidently, so far as can be told from the record, they were not there when Frederick's father went to his work of cutting poles. We can hardly assume that under all the circumstances, as a matter of law, Walter Van Horn must be held to have known that the deer would come in the forenoon during the time he was absent at work and in such numbers as to destroy the garden. Undoubtedly they had not done so before the date mentioned.

Our attention is directed to the case of Chicago, Burlington & Quincy Railway v. Cook, 18 Wyo. 43, 102 P. 657, as a case in point so far as concerns the legal principles applicable to this branch of the case. We cannot agree with this contention. In that case the owner left property enclosed in inflammable paper wrappings, in close proximity to and on the right of way of a railroad, with engines regularly passing back

and forth, emitting sparks, and it was there held that she was guilty of contributory negligence in thus exposing the property for a period of three or four days to such hazard. Here, we think the more pertinent principle applicable is as held in Chicago Telephone Company v. Commercial Union Assurance Co., Ltd., of London, 131 Ill. App. 248, that the doctrine of contributory negligence does not apply where it appears that the omission or conduct alleged to constitute contributory negligence was in the doing or the not doing of some act or acts in relation to a danger not reasonably to have been apprehended. In the opinion in that case the decision in Engel v. Smith, 82 Mich. 1, 7, was quoted to this effect:

" 'It is a sound rule of law that it is not contributory negligence not to look out for danger when there is no reason to apprehend any. Beach Contrib. Neg., 41.' "

In Foreman v. Western Union Telegraph Co., 228 Ky. 300, 14 S. W. (2d) 1079, the court declared:

" 'Contributory negligence is not imputable to any one for failing to look out for danger which he has no reasonable cause to apprehend.' Shearman and Redfield, §§ 90, 653, 654."

Said the Supreme Judicial Court of Massachusetts in Wall v. King, 280 Mass. 577, 182 N. E. 855,

" 'One is bound to anticipate and provide against what usually happens and what is likely to happen, but is not bound in like manner to guard against what is unusual and unlikely to happen, or what, as is sometimes said, is only remotely and slightly probable.' Falk v. Finkelman, 268 Mass. 524, 527, 168 N. E. 89, 90."

In Boudreaux v. Ladet, 4 La. App. 415, where the case of Haas v. Director General of Railroads, 150 La. 599, 91 So. 58, a case much like the Cook case, supra, was urged as in point, yet the court said:

"Counsel for defendant contends that plaintiff is

likewise responsible for contributory negligence in this case because he had stacked his cord-wood in the swamps, and knew or should have known that tiemakers, hunters and the farmers in clearing their fields might set fire to brush or rubbish which, fanned by strong winds, could spread to the spot where the wood had been corded. The cases are not at all similar. In the Hass case the owner placed the lint cotton, a well-known very inflammable material, next to the railroad track where he knew locomotives were passing and had to pass at every moment. He knew that cinders will, at times, escape from the best and most modern spark arresters, and, having placed the lint in such close proximity to the track, such exposure unquestionably constituted contributory negligence."

It is argued for the Commission that there is no provision in Section 47, supra, as to how the claim made thereunder is to be paid, but Section 28 of said Chapter 64 provides for a fund under the control of the Commission which is "for the purpose of carrying out the provisions of this Act and the orders of the Commission." Where that body acted erroneously upon a claim in denying it, and the district court so finds, such adjudication by the court, upon a trial de novo, plus an order directing the Commission to pay the claim, would seem proper to support a liquidation thereof.

So far as the contention made on behalf of the Commission, that the decision of the court was contrary to the evidence in that the lettuce was worth only forage value and that the market price of said lettuce was not satisfactory proven, it is deemed sufficient to say that while the evidence was conflicting on these matters, we do not find, upon a careful inspection of the record, that there was no substantial evidence to uphold the trial court's conclusions upon it. No useful purpose would be subserved by reviewing in detail the evidence, and we shall not do so. There was evidence, however, that the delivered market price for a dozen heads of head lettuce in Casper at the time the property was

destroyed was about ninety cents. Yet the claim actually made to the Commission was for sixty cents a dozen. One reputable witness, a grocery man with years of experience in that business, testified in response to the question, "How does the lettuce from Van Horn compare with other lettuce you purchase?" "I can truthfully say, the little over eight years I have been there, it is the nicest lettuce Casper has ever seen. It is my opinion it is exceptionally nice—I would put it—exceptionally nice." This man had frequently purchased head lettuce grown by the Van Horns and had sold it at retail in his store in Casper. Under the rules governing the consideration of evidence of this character in this court, we are unable to perceive that we could properly disturb the district court's finding and judgment in these respects.

It is said that the court was influenced by passion and prejudice in the rendition of the judgment attacked. As we read the record, it is devoid of any such disclosure. It is apparent that the action of the Commission was not based upon a disposition of the Van Horn claim upon its merits. It is not asserted, nor do we find anything in the statute, which affords any ground for declining a claim of this character on the basis assigned by the Commission for its ruling. The district court heard and saw the witnesses upon a full trial de novo upon the actual merits of the controversy, and we are unable to say that its conclusions were mistaken ones.

Finding no prejudicial error in the record before us, the judgment of the district court should be affirmed, and it will be so ordered.

*Affirmed.*

KIMBALL and BLUME, JJ., concur.